UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. DALE A. DROZD, JUDGE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> MICHAEL GALLOWAY, ) <br> ) <br> Defendant. ) <br> _____) | No. 14-CR-114-DAD <br><br> MOTION TO DISMISS <br> DISCOVERY MOTION |

Fresno, California                          Monday, March 28, 2016

REPORTER'S TRANSCRIPT OF PROCEEDINGS

KAREN HOOVEN, RMR-CRR
Official Court Reporter
CSR No. 5816

APPEARANCES OF COUNSEL:

For the Plaintiff:      United States Attorney's Office
                        BY: **MEGAN RICHARDS**
                        2500 Tulare Street
                        Suite 4401
                        Fresno, California 93721

For the Defendant:      Federal Defender's Office
                        BY: **ANN H. McGLENON**
                        2300 Tulare Street
                        Suite 330
                        Fresno, California 93721

|    |                                                           |
|----|-----------------------------------------------------------|
| 1  | Monday, March 28, 2016                    Fresno, California |
| 2  | 10:45 a.m.                                                |
| 3  | THE CLERK:  Court calls item number 5.  14-CR-00114. |
| 4  | United States versus Michael Galloway.  Motion to dismiss |
| 5  | indictment and motion for discovery.                      |
| 6  | MS. McGLENON:  Good morning, Your Honor, Ann McGlenon |
| 7  | for Mr. Galloway, who is not present in court due to a waiver |
| 8  | of appearance.                                            |
| 9  | MS. RICHARDS:  Good morning, Your Honor, Megan      |
| 10 | Richards for the United States.                           |
| 11 | THE COURT:  Good morning.  And you don't need to    |
| 12 | stand if you can pull that microphone over near you.  Anybody |
| 13 | can argue from counsel table or the podium, wherever they're |
| 14 | more comfortable.                                         |
| 15 | MS. RICHARDS:  Thank you, Your Honor.               |
| 16 | THE COURT:  I have one question before I hear any   |
| 17 | other argument.  Why is the motion for discovery in front of |
| 18 | me?                                                       |
| 19 | MS. McGLENON:  Well, Your Honor, it was -- what     |
| 20 | happened was I was preparing this motion to dismiss based on |
| 21 | the statute of limitations and also a *Kastigar* type motion.  I |
| 22 | didn't have evidence of whether, how or when Mr. Livsey, the |
| 23 | accountant, provided the backup computer disk.  So I just |
| 24 | filed the motion for discovery to clear that up.          |
| 25 | THE COURT:  Okay.                                   |

1    MS. McGLENON:  That's why it's in front of you.
2    THE COURT:  Okay.  I just wanted to make sure, you
3 know, it wasn't part of the secret Fresno handshake thing that
4 I learn about all the time --
5    MS. McGLENON:  It is not.
6    THE COURT:  -- since my arrival.  That, oh, no, you
7 know, in this kind of a case, you get the discovery motion.
8    MS. McGLENON:  And Your Honor, in this case, next
9 week I'm looking at all the stuff that's at the IRS.  And so
10 the *Kastigar* motion may still be forthcoming.
11    THE COURT:  But in any event, the way I read the
12 discovery motion, the government's represented that if it
13 exists, it's been turned over or made available.
14    MS. McGLENON:  Last week, I got the --
15    THE COURT:  Right.
16    MS. McGLENON:  -- the actual disk with the -- and the
17 password.
18    THE COURT:  But as we sit here today, my
19 understanding is the government is saying anything that you've
20 asked for in this motion, if it exists, it's either been made
21 available or you're free to look at it.  Right?
22    MS. RICHARDS:  That's right, Your Honor.  With the
23 exception of the *Henthorn* request --
24    THE COURT:  Right.
25    MS. RICHARDS:  -- which would be closer to trial.

1   Everything, I believe, we have looked for and we've provided
2   or we've made available at the IRS.
3           MS. McGLENON:  Right.  And if I get to the IRS and
4   there is nothing and the one thing that I'm really looking for
5   isn't there, then we'll deal with that.
6           THE COURT:  So with respect to the discovery motion,
7   I can either -- I mean, I know what I used to do as a
8   magistrate judge on discovery motions.  I'd grant the defense
9   motion and say, and on the record, the government has
10  satisfied me that the requested discovery has been produced.
11  But I don't know if that's -- since I haven't done discovery
12  motions here because they're not supposed to come in front of
13  me.  I'd just as soon, you know, have some sort of order on
14  the record.  Or I can just say the motion for discovery is
15  denied as having been rendered moot.  Anybody care?
16          MS. McGLENON:  I'd prefer grant and received.
17          MS. RICHARDS:  That's fine, Your Honor.
18          THE COURT:  All right.  The defense discovery motion
19  is granted.  The Court is satisfied, based upon the
20  representations of the government, that the requested
21  discovery has been provided.  That's without prejudice to any
22  continued discussion regarding *Henthorn* material should the
23  case proceed to trial.
24          MS. RICHARDS:  Thank you, Your Honor.
25          MS. McGLENON:  And the secret handshake part of that,

1  just so the Court knows, some of the judges prefer that once
2  anything is heard in the district court, that it's all heard
3  in the district court.
4           THE COURT:  I will state right now that after 18
5  years of hearing what mostly are discovery motions made solely
6  for purposes of the record, I have no interest in hearing
7  discovery motions in my criminal cases.  No matter when
8  they're filed.
9           MS. McGLENON:  Okay.  Thank you.
10          THE COURT:  Happy to let my magistrate judge friends
11 hear those.
12          MS. McGLENON:  Thank you.
13          THE COURT:  Now, on the underlying motion, Ms.
14 McGlenon.
15          MS. McGLENON:  Yes.
16          THE COURT:  It looks like, although the Ninth Circuit
17 may not have addressed this precisely, that Ms. Richards has
18 been fairly successful in finding authority that supports the
19 government's position with respect to conduct undertaken
20 subsequent to the underlying criminal conduct as, in fact,
21 being steps in furtherance of the offense so as to bring all
22 the counts of this indictment within the six year statute of
23 limitations.
24          The cases that she cited, which I have taken a look
25 at, and in particular the *Perry* decision by the Eighth

1   Circuit, seem to say what she represents that they say, that,
2   yes, judge, in circumstances very similar to these, a
3   defendant's statements made to agents after the fact that
4   continued to arguably hide or continued the tax fraud in
5   question do, in fact, extend the statute of limitations.
6          I know you make an argument that has some facial
7   appeal to it, that, look, words alone can't extend a statute
8   of limitations.  I think Ms. Richards is basically saying,
9   yes, they can, and here's the authority for it.
10         So at this point, I think you have the laboring oar,
11  even though I understand the argument that you're making.  It
12  seems like the weight of authority is in the government's
13  favor on this question.
14         MS. McGLENON:  Your Honor, I read the cases as well.
15  As I understand it, simple statements -- and that's what we
16  have here.  Is he's called in for an interview and he comes
17  in.  Mr. Galloway is not always the most agreeable character.
18  He comes in and he speaks to them.  I think it's completely
19  different from keeping a double set of books, from making
20  false entries.
21         What Mr. Galloway did was he took his finances and
22  gave them to his accountant.  At the time in -- I believe it
23  was in 2010, IRS had already seized one of his accounts.  And
24  another -- well, let me just do this in order.  2003.
25  Galloway -- I would just note I'm referring to something that

1  I have not put in the paperwork.  But when I was going through
2  the information that I've recently gotten, on page 9524,
3  there's a note.
4          And I just -- if I may, I'll just read it into the
5  record.  "Note:  Due to incomplete deposit records" -- and
6          this is in the government's discovery -- "received
7          from Union Bank of California for the 9561 account
8          relating to 2003, it is not possible to determine
9          actual income and non-income deposits into the
10         account.  Records received from Union Bank of
11         California were incomplete for 2003 because some of
12         the records were destroyed per a seven-year retention
13         policy.  Because an accurate adjustment amount cannot
14         bed determined for this account, no adjustment is
15         being made to this account.  Further, it's believed
16         that nearly all of the income deposited into this
17         account was recorded."
18         I would just say that I think that specifically, and
19 especially for 2003, when there is destruction of records,
20 expecting that a taxpayer is going to remember every deposit
21 and withdrawal that's made from accounts seven years later
22 that are already destroyed is a -- is an unrealistic
23 expectation.
24         And I would also note that in the government's case,
25 in its citations, what it says are false statements, it

basically quotes itself. And I'll go to page four,

"The defendant's false statements on February 23rd, 2010 similarly prevent the IRS agents from determining the defendant's taxable income."

Now, what -- and then it says, "as alleged in the indictment." That's the language that's used.

So the government alleges it, alleges that the defendant said that he only lived on a couple hundred bucks a week.

Now, my understanding, both from the statement and from talking to defendant and his attorney, is that he initially did say that. And then when they clarified, "Well, what about your mortgage?" He said, "Well, that -- I pay everything out of my Catholic Online account."

And in viewing the report at page 9561, it says that he paid with Catholic Online funds. He has -- he had merchant accounts, he had a financial services account and he had his Catholic Online account, which was a personal account.

Your Honor, people are -- the reason that the tax code is considered to be different from every other kind of criminal code is because this stuff is so complicated.

So in 2003, he -- they can't reproduce his bank records. He can't reproduce his bank records. He tells, as best he can, what happens year by year and then they quote him -- and I will say I -- I'm guessing that 2010 is before

Case 1:14-cr-00114-DAD-BAM   Document 44   Filed 04/25/16   Page 10 of 20

10

1  they change the rules for agents requiring them to tape
2  statements.  But if it isn't, if I haven't made that request,
3  I'd sure like to see that tape.
4         And then he said -- they said that -- they quote him
5  in the next paragraph on page four, his statement that "all
6  the money went from his merchant account into the Catholic
7  Online account."  They don't say that that's a false
8  statement.  And it's clear that not all -- what he had was an
9  account where money would be deposited by and -- in the
10 Catholic Financial Services account.  And that would be by and
11 for others.
12        And he didn't even have access to that account.  But
13 that account got seized by the IRS at one point.  And
14 then -- and so the Court knows, he was also in litigation with
15 the District Attorney in Kern County at the same time.  So his
16 accounts were hung up.
17        His statements that he paid his mortgage payments and
18 his cars in cash from a cash horde.  I would deny that he
19 would ever use that term.  The term "cash horde" is not a term
20 he would use.  It is not a term that he would be capable of
21 defining right now.  It's not a term that his attorney has
22 ever heard him use.
23        So while I'm not saying that he didn't say that he
24 had inherited funds at some point and that -- and the other
25 thing, on his cars, and I'm not clear on this from -- and

1   these will all be issues of fact.  But I think if we're going
2   to go all the way back, I have to be able to prove some of
3   this stuff.  And if -- and the reason for statute of
4   limitations is so that we can have a coherent trial.
5           And, for example, with his cars, he may have bought
6   them with cash and then refinanced them from his credit union.
7   As the Court knows, from the constant -- well, maybe not.
8   Maybe that's in the reports.  But there were -- there were
9   many references to his -- the troubles that he had with his
10  marriage.  And so he would go back to -- he went back and
11  refinanced the cars.  That doesn't mean he didn't pay for them
12  in cash initially and then realized that he needed that value.
13  But I have not seen those records.  And this is part of the
14  problem.
15          Let's see.  She says, on page 4, "A reasonable
16          inference regarding defendant Galloway's false
17          statements to IRS agents is that he made the
18          statements to avoid calculation of the income tax he
19          owed."
20          And I would say that these statements are just the
21  opposite.  They called him in.  He came in to cooperate.  They
22  asked him did you -- you know, "What did you do?"  He said, "I
23  have bookkeepers who keep my books and they do them on
24  QuickBooks and they pass those to my CPA every year."
25          Now, he paid his taxes.  He filed his taxes and he

1  paid his taxes.  And the last act of evasion in 2003 would
2  have been the filing, which also is not within the statute of
3  limitations period.
4          And to call him in and say, "You need to tell us
5  right now, you know, what -- how you paid your bills."  To
6  which he said, "Well, I just keep a couple hundred bucks in my
7  pocket."  When they then said, "Who pays your mortgage?"  He
8  said, "I pay my mortgage out of my bank account."
9          THE COURT:  But doesn't *Perry -- doesn't the Eighth
10 Circuit decision in Perry* suggest that if there is a credible
11 theory that statements to IRS agents was a continuing part of
12 the deception, that the question of whether or not the
13 false -- the allegedly false interview statement, whether that
14 is an act of evasion or not that falls within the applicable
15 statute of the limitations is a question that goes to the
16 jury.
17         Isn't that what happened in *Perry?*  The circuit said
18 that that question was appropriately submitted to the jury and
19 by returning the verdict, that the jury was instructed in that
20 case, you have to find that an act of evasion occurred within
21 the applicable statute of limitations.  Am I right about that?
22         MS. McGLENON:  That's my recollection, was that they
23 did say that -- and that was part of the problem.  They said
24 you have to find this.  And I think --
25         THE COURT:  Well, my point is you're going -- well,

1   Ms. Richards, what's the government's position on that?  I
2   mean, Ms. McGlenon is asking me to move to dismiss these
3   counts now as being barred by the statute of limitations.
4   Doesn't *Perry* really suggest, well, look, if there's -- if
5   there's an argument that there's an act within the statute of
6   limitations that is the last act of evasion, the government
7   gets to present that to the jury, but the jury ultimately can
8   decide that, no, that's not an act of evasion?
9        MS. RICHARDS:  That's right, Your Honor.  It's the
10  government's position that at trial, the government would have
11  to put on a case showing that there was, for each of these
12  counts, an act of evasion within the statute.
13       So in *Perry*, the jury did find that the defendant had
14  evaded within the six years.  And so there was no violation of
15  the statute of limitations.
16       So in our case, it's -- the facts may be a little bit
17  different than in *Perry* because we might need to have a
18  special verdict form for the jury to find that the defendant
19  lied during that time period to extend the statute of
20  limitations.  But it is a jury question that we wouldn't be
21  able to determine right now.
22       As alleged in the indictment, there -- the defendant
23  did lie and his statements were to evade taxation.  It sounds
24  like the defense perspective is that he didn't lie to avoid
25  taxation and that maybe he was confused.  But ultimately,

1    that's an issue of fact that the jury would need to determine.
2            THE COURT:  I guess my point was, Ms. McGlenon, you
3    know, you're making arguments that don't sound like legal
4    arguments.  They sound like, "No, no, you know, this stuff is
5    complicated."  You know, "He may have made an offhanded
6    comment, but then later on in the interview he came back and
7    clarified or presented other information."
8            Well, I read the cases that the government has been
9    citing to me as saying, hey, the jury decides whether or not
10   that was an act of evasion or not.  They decide whether -- was
11   that an act of evasion or was that a misunderstanding?  Did he
12   lie?  Did he actually clarify?  You know, you get to make all
13   these arguments.  But you make them in the context of the
14   trial.
15           MS. McGLENON:  Your Honor, my understanding -- and I
16   can't remember whether it was *Perry* or whether it was another
17   one -- was that they did not -- it did not get raised
18   pretrial.  This is a -- filing the motions regarding statute
19   of limitations, as I understand it, is -- it requires a
20   pretrial motion.  And if it's not filed pretrial, then at the
21   trial they get to bring it all in.
22           But if you file it pretrial, and you make it
23   clear -- I mean, in 2003, it's clear that they can't -- that
24   there's a violation.  They can't even provide me with the bank
25   records because they can't get them.  I think that -- and to

1  say that he said something in 2010 that brings back the 2014
2  filing, brings it back to 2003, I think is impossible.
3          THE COURT:  Well, it would be better if you had some
4  authority for that.
5          MS. McGLENON:  Well, Your Honor, I do have authority.
6  Every case that I cited says that the -- let me just get there
7  for just a moment.  Sometimes in the cases, it's -- it has to
8  do with what's not said.  And in each of those cases, the
9  people did not file motions -- and it's stated in the facts in
10 the beginning of the case that there were not filed motions to
11 dismiss for statute of limitations.
12         And -- okay.  Let's start with the Fifth Circuit, *US
13 v Irby*.  It's the one that defines the last affirmative act as
14 the filing of the return.
15         It was going through those facts that I realized that
16 Count Four has to go forward.  2006 has to go forward, so
17 that's why I didn't even file on Count Four.  But all the
18 others, it talks about what the last -- the last act of
19 evasion is in each of the cases.  In *Carlson*, in *Cheek*, and in
20 *Irby*.  And to -- and the mere fact of negligence,
21 carelessness, misunderstanding or unintentional understatement
22 of income does not convert a simple statement to a
23 willful -- to anything willful.  And, you know, I --
24         THE COURT:  Okay.
25         MS. McGLENON:  That's all I got.

1       THE COURT:  I understand the argument.  I'm not going
2  to rule.  I'm going to issue something in writing.  But -- and
3  I want to take a little bit further look.
4       But Ms. Richards, do you have anything else you want
5  to add?  I haven't spoken to you much.
6       MS. RICHARDS:  I would just respond to what Ms.
7  McGlenon just said.  The government's position is not that a
8  misstatement later on would extend the statute.  The
9  government's position is that an act of evasion that's
10  intentional, knowing and is made to evade calculation or
11  payment of the taxes.  That's what is --
12       THE COURT:  And that's what you alleged in each of
13  Counts One and Three of the indictment.  I mean, the language
14  of the --
15       MS. RICHARDS:  That's right.
16       THE COURT:  The language of each of those counts
17  alleges that on or about February 23rd, 2010, making false
18  statements to IRS Special Agents and a Tax Compliance Officer
19  to conceal the defendant's income during the 2003 tax year in
20  the case of Count One, all in violation of 26 -- I mean, you
21  alleged your theory with respect to the statute of limitations
22  in each counts one, two and three.
23       MS. RICHARDS:  That's right.
24       THE COURT:  So I get it.  It's just a question of,
25  all right, are you right about the law?  I think you are.  I

```
 1  want to take one more look and then I'm going to issue a
 2  written order.  Anything else you wanted to add?
 3            MS. RICHARDS:  One point that I would like to make.
 4            THE COURT:  The point I just wanted to make to Ms.
 5  McGlenon is, while I think you might be right on the law, that
 6  doesn't mean that this issue is a dead letter.  I mean, as I
 7  read the cases -- I was actually a little bit surprised.  But
 8  when I read the decisions, I thought, oh, that's interesting,
 9  this statute of limitations issue really ends up going to the
10  jury.
11            MS. McGLENON:  All the way.  But if I don't raise it
12  now --
13            THE COURT:  You can't.
14            MS. McGLENON:  -- it doesn't go there.
15            THE COURT:  All right.  I think the bottom line is I
16  think you've preserved your objection and I think this
17  ultimately gets resolved by the jury.  But I'm going to take
18  another look that I make sure that I feel comfortable that
19  that's, in fact, the law.  Yes.
20            MS. RICHARDS:  I actually don't have anything else.
21  But thank you.
22            THE COURT:  All right.  I've ruled on the discovery
23  motion.  The motion to dismiss is taken under submission.
24  Hopefully an order issues within the week.
25            MS. McGLENON:  Thank you, Your Honor.
```

1        MS. RICHARDS:  Thank you.
2        THE CLERK:  Should we set a status conference before Judge McAuliffe?  There's no future hearing, to my knowledge.
4        THE COURT:  We probably should.  If I get an order out within a week or so, how far down the road do you folks want to go back before Judge McAuliffe?
7        MS. McGLENON:  I don't know.  We had talked about perhaps setting for trial.
9        MS. RICHARDS:  Yes.  We have.  We could do that today.
11       MS. McGLENON:  Yeah.  If the Court --
12       THE COURT:  Sure.  You want to go there today?
13       MS. RICHARDS:  Sure.
14       THE COURT:  If you think you're ready.  Although we can set any other date, too, if you want a little bit of time to think about it.
17       MS. McGLENON:  The only other thing that I have is the question about that *Kastigar* motion, which I don't even know whether that is going to be applying.
20       THE COURT:  When do you think you'll know by?
21       MS. McGLENON:  I'm going next week to look at the next of the discovery.  And I'll know --
23       THE COURT:  Two weeks?  About two weeks out, then you should know and be able to tell Judge McAuliffe what the plan is.

```
1            MS. McGLENON:  Yes.
2            THE COURT:  Two weeks out.
3            THE CLERK:  Her next available date is April 25th,
4   Your Honor, she's not in session March 28th or April 11th.
5            MS. RICHARDS:  That's fine with the government, Your
6   Honor.
7            THE COURT:  All right.  Then you'll definitely know
8   by then what the --
9            MS. McGLENON:  Yeah.  And is that at 1:30?
10           THE COURT:  April 25th at one p.m.
11           MS. McGLENON:  One p.m.
12           THE COURT:  Thank you.
13           MS. McGLENON:  Thank you.
14           MS. RICHARDS:  Thank you, Your Honor.
15           Oh, and Your Honor, the government would move to
16  exclude time on the basis of defense preparation and reviewing
17  the motions.
18           THE COURT:  Well, certainly time is excluded all the
19  way until the time I rule on the motion to dismiss based upon
20  the pendency of motions.  Has there been a previous exclusion
21  of time for -- under T4, 87(b)(4), Ms. McGlenon, for defense
22  preparation?  Seems to me it's a fairly complex --
23           MS. McGLENON:  Yeah.  I'm sure it has.  I don't -- my
24  notes don't actually show it, but I don't have any --
25           THE COURT:  I'm going to -- do you represent to the
```

Case 1:14-cr-00114-DAD-BAM   Document 44   Filed 04/25/16   Page 20 of 20

20

1  Court that you do need the additional time that you've asked
2  for for the status conference in order to prepare?
3           MS. McGLENON:  I would request that time be excluded
4  through -- to and through the 25th.
5           THE COURT:  That will be the order.  The exclusion
6  based in part on the pendency of motions under Local Code E,
7  3161(h)(1)(D), but also all the way to the next status
8  conference date before Judge McAuliffe in order to provide
9  defense counsel reasonable time to prepare with -- based upon
10 the representations of counsel, the exclusion of time being
11 compelled and finding that the interest of justice outweigh
12 any interest the public or the defendant have in a speedy
13 trial to the extent of that exclusion, that exclusion being
14 under 3161, 87(b)(4), Local Code T4, all the way to the time
15 of the next status.
16          MS. McGLENON:  Thank you.
17          MS. RICHARDS:  Thank you.
18          THE CLERK:  Court's in recess.
19          (The proceedings were concluded at 11:15 a.m.)
20
21          I, KAREN HOOVEN, Official Reporter, do hereby certify
22 that the foregoing transcript as true and correct.
23
24 DATED:  25th of April, 2016        /s/  Karen Hooven
                                      KAREN HOOVEN, RMR-CRR
25