1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,              No.  1:14-cr-00114-DAD-BAM

12                 Plaintiff,

13        v.                                ORDER RE DEFENDANT'S MOTION TO
                                            SUPPRESS EVIDENCE
14   MICHAEL GALLOWAY,
                                            (Doc. No. 67)
15                 Defendant.

16

17        Defendant Michael Galloway is charged by way of indictment with four counts of

18   attempting to evade and defeat payment of tax in violation of 26 U.S.C. § 7201.  (Doc. No. 1.)

19   On September 2, 2016, counsel on behalf of defendant Galloway filed a motion to suppress all

20   evidence obtained as the result of an allegedly illegal search and seizure of his business records

21   obtained by Internal Revenue Service (IRS) agents from defendant's certified public accountant

22   (CPA), Carl Livsey.  (Doc. No. 67.)[1]  Alternatively, defendant Galloway moved to exclude all

23   evidence obtained by the government as a result of alleged violations of 26 U.S.C. §§ 7603 and

24   7609 by IRS Special Agent Brian Applegate.

25        On October 11, 2016, the court held a hearing on the motion.  (Doc. No. 76.)  Assistant

26   United States Attorneys Michael Tierney and Megan Richards appeared on behalf of the

27   _____

28   [1]  Counsel for defendant Galloway did not request an evidentiary hearing in connection with the
     motion.  *See* Local Rule 430.1(h).

                                           1

1    government.  Assistant Federal Defenders Erin Snider and Ann McGlenon appeared on behalf of

2    defendant.  (*Id*.)  The court heard oral argument and the motion was taken under submission for

3    decision.  For the reasons set forth below, defendant Galloway's motion will be denied.

## I.  The Evidence

5         As noted above, the defendant did not request an evidentiary hearing in connection with

6    the pending motion to suppress evidence.  Instead, defendant has filed with the court four exhibits

7    in support of his motion.  (Doc. No. 67-1.)  In support of its opposition to the pending motion the

8    government has submitted six exhibits.  (Doc. Nos. 69-1, 69-2, 69-3, 69-4, 69-5, and 69-6.)  In

9    support of his reply, defendant has submitted the supplemental declaration of defense investigator

10   Victor D. Gonzalez.  (Doc. No. 72-1.)  Collectively, the declarations and exhibits submitted by

11   the parties in connection with the pending motion reflect the following.

12        In a letter dated November 2, 2006, the IRS informed defendant Galloway that his 2003

13   federal income tax return had been selected for audit and requested that he provide a variety of

14   tax related documents.  (Doc. No. 69-2 at 7–11.)  In the midst of this audit, Galloway's CPA, Carl

15   Livsey, sent defendant a letter dated August 13, 2007, notifying him that he was terminating the

16   provision of all accounting and tax services immediately due to Galloway's non-payment of fees

17   in connection with services previously rendered.  (Doc. No. 69-2 at 5.)  In that letter CPA Livsey

18   also advised defendant that the IRS audit was still in progress and that he needed to engage the

19   services of another accountant to represent him and his company.  (*Id*.)  On August 7, 2008,

20   defendant's case was approved for criminal investigation by the IRS Criminal Investigation

21   Division (CID).  (*Id*. at 3.)  A March 30, 2009 entry in Special Agent Applegate's IRS criminal

22   investigation daily diary notes that he "[a]nalyze[d] quickbooks."  (Doc. No. 67-1 at 2.)

23        On April 9, 2009, IRS CID Special Agent Kulbir Singh Mand and Applegate went to the

24   office of defendant's business, Catholic Online, in Bakersfield, California.  (Doc. No. 67-1 at

25   20.)[2]  When the agents approached the front door to the business, an unidentified male locked the

26   door and informed the agents that he was calling the police.  (*Id*.)  The agents called the

27   _____

28   [2]  Special Agent Applegate's memorandum of activity dated April 15, 2009 narrates an account of
the events of April 9, 2009.  (*See* Doc. No. 67-1.)

1    Bakersfield Police Department dispatch and informed them that they were two plain clothed and

2    armed federal agents waiting for the arrival of police.  (*Id*.)  Prior to the police arrival, an

3    individual identifying himself as Nick Leyendecker exited the building and approached the

4    agents.  (*Id*.)  The agents informed him that they wanted to provide Michael Galloway with some

5    information.  (*Id*.)  Leyendecker went back inside Catholic Online and shortly thereafter came out

6    and provided the agents with the contact information for Galloway's attorney.  (*Id*.)  Bakersfield

7    police later arrived at the scene and the IRS CID agents departed.  (*Id*.)

8          After visiting the Catholic Online on April 9, 2009, agents Mand and Applegate served

9    CPA Livsey with a summons requiring the production of records relating to his former client,

10   defendant Galloway.  (Doc. No. 69-4 at 2.)[3]  In his memorandum of activity dated that same day

11   Agent Applegate wrote:

12          In light of the fact that this contact with MICHAEL
              GALLOWAY's employees made a previously covert investigation
13          overt, I decided that it was important to serve Carl Livsey with the
              summons as soon as possible in order to obligate Livsey to
14          maintain the records and ultimately provide them to me.    I
              handwrote the summons using a blank summons from, FORM
15          2039, that I had with me.  I do not recall making or maintaining any
              copies of the summons before serving the summons on Livsey.
16

17   (*Id*. at 2.)

18          On June 22, 2010, IRS CID Special Agents Mark Silva and Applegate interviewed CPA

19   Livsey at his place of business.  (Doc. No. 69-3 at 2.)[4]  Livsey had prepared most of defendant

20   Galloway's tax returns and identified Galloway's 2003, 2004, and 2005 tax returns as among

21   those he prepared.  (*Id*.)  Livsey stated that he used profit and loss statements printed from

22   ────────────────────
     [3]  This account of the service of summons comes from Agent Applegate's memorandum of
23   activity dated April 25, 2016.  (*See* Doc. No. 69-4 at 2–3.)  Defendant Galloway has argued that
     the court should assume that no summons was issued.  The court notes that the defendant has
24   previously moved for return of the documents in question pursuant to Rule 41 of the Federal
     Rules of Criminal Procedure.  The assigned magistrate judge denied that motion.  (Doc. No. 64.)
25   In so ruling, the magistrate judge also concluded, based upon the evidence before the court, that a
     summons had been issued to CPA Livsey and the documents called for were turned over to the
26   IRS pursuant thereto.  (*Id*. at 3-4.)  The court is not persuaded by the evidence presented on this
     motion that it should stray from that finding.
27

28   [4]  Applegate's memorandum of June 30, 2010 summarizes this interview.  (*See* Doc. No. 69-3.)

1    Quickbooks and provided to him by Galloway's bookkeeper and wife to prepare Galloway's tax

2    returns.  Livsey was not provided with bank records in preparing the returns and did not review

3    the returns with Galloway.  (*Id*. at 2-3.)  The IRS audited Galloway's 2003 tax returns.  (*Id*. at 3.)

4    During that audit, Livsey obtained an additional Quickbooks print to use to assist his analysis

5    during the audit.  (*Id*.)  Livsey noticed that the newly obtained Quickbooks print reflected dollar

6    amounts that did not match the Quickbooks print that he had used to prepare the 2003 tax return

7    for Galloway.  (*Id*.)  During the audit, Livsey showed the auditor the Quickbooks printout

8    showing the additional information.  (*Id*.)  Livsey did not know who provided him with the

9    additional Quickbooks information.  (*Id*.)  Livsey also reviewed the payroll tax information and

10   concluded that the IRS was correct in that regard and that it appeared Galloway owed payroll

11   taxes.  (*Id*.)  Livsey did not prepare the payroll tax returns and did not know who did.  (*Id*.)

12   Livsey told Galloway about the audit of his 2003 return.  (*Id*.)

13        On March 31, 2016, defense investigator Gonzalez and Assistant Federal Defender

14   McGlenon went to the IRS to review discovery in this case.  (Doc. No. 72-1 at 1.)[5]  McGlenon

15   told Agent Applegate that although they would review the boxes of discovery that the agent had

16   set up on tables and mark items for copying, they really only wanted to see the summons for the

17   CPA records.  Agent Applegate stated that he had looked in his file, but could not find the

18   summons, and then showed investigator Gonzalez and Assistant Federal Defender McGlenon the

19   box of records obtained from CPA Livsey, which also did not contain the summons.  (*Id*.)  Agent

20   Applegate reported that he had checked with the agent who had accompanied him when he went

21   to see CPA Livsey but that agent did not have a copy of the summons either.  (*Id*.)

22        On September 13, 2016, Assistant U.S. Attorney Megan Richards interviewed Livsey over

23   the telephone with Assistant U.S. Attorney Michael Tierney and IRS CID Special Agent Michele

24   Casarez also on the call.  (Doc. No. 69-3 at 5.)[6]  During that interview Livsey stated as follows.

25

26   [5]  Gonzalez summarizes this visit in his declaration dated September 23, 2016.  (*See* Doc. No. 72-1.)

27

28   [6]  Special Agent Casarez's memorandum of contact dated September 13, 2016 summarizes this telephone call.  (*See* Doc. No. 69-3 at 5–6.)

1   In general when he "receives a request for certain documents regarding the tax years under audit,

2   he will give his client the letter and take whatever documents the clients provides him and submit

3   them to IRS.  The client is aware he is giving the documents to IRS as part of the audit."  (*Id.*)

4   Each of Livsey's clients would also sign a power of attorney form on file.  (*Id.*)  Galloway gave

5   Livsey a disk with Quickbooks records for 2003–2005.  (*Id.*)  An IRS special agent issued Livsey

6   a summons for Galloway's records and an agent then picked up those records.  (*Id.* at 5–6)

7   Livsey, however, did not remember if he told Galloway about the summons; however, his normal

8   practice was to call a client about an audit or a summons.  (*Id.* at 6.)

9          On September 14, 2016, AUSA Richards interviewed Agent Applegate.  (Doc. No. 69-4

10   at 4.)[7]  Applegate stated that he served Livsey with a summons asking for records relating to the

11   preparation of tax returns for the tax years 2003 through 2006 for Galloway and any of his

12   businesses.  (*Id.*)  The summons was handwritten.  (*Id.*)  In the last ten years, Agent Applegate

13   does not recall ever preparing a handwritten summons with the exception of the one he served on

14   Livsey.  (*Id.* at 5.)  IRS Special Agent Kulbir Mand was with Applegate when he physically

15   served the summons on Livsey.  (*Id.* at 4.)  Agent Applegate stated he would have sent a copy of

16   the summons to Galloway after serving it on Livsey.  (*Id.* at 5.)  He also would have given a copy

17   of the summons to Galloway's attorney after he received a power of attorney signed by Galloway

18   and his attorney.  (*Id.*)  Agent Applegate said he would have written a due date on the summons

19   for at least twenty-three days after the date of service to allow Galloway an opportunity to quash

20   the summons.  (*Id.*)  Applegate kept all of the summonses issued in the case in a folder in his

21   office.  (*Id.*)  However, at the time of the interview, a copy of the summons issued to Livsey could

22   not be found in this paperwork.  (*Id.*)

23          On September 15, 2016, AUSA Richards telephonically interviewed Special Agent Mand.

24   (Doc. No. 69-5 at 2.)[8]  Agent Mand recalled being with Agent Applegate on April 9, 2009 for the

25

26   [7]  Special Agent Michael Coleman's memorandum of interview dated September 15, 2016
     summarizes the interview.  (*See* Doc. No. 69-4 at 4–6.)

27

28   [8]  Agent Casarez summarized this call in a memorandum of interview dated September 16, 2016.
     (*See* Doc. No. 69-5 at 2–3.)

1  attempted interview of defendant Galloway at the offices of Catholic Online and the subsequent

2  issuing of the summons to CPA Livsey.  (*Id*.)  Agent Mand explained "they did not initially

3  expect to be issuing a summons that day however considering the reaction of the employees [at

4  Catholic Online], the agents felt it was necessary to contact the CPA and preserve records."  (*Id*.)

5  Agent Mand had a blank summons form and gave it to Agent Applegate and watched him

6  complete the form by hand.  (*Id*.)  Agent Mand did not see specifically what was written on the

7  form summons.  (*Id*.)  Agents Mand and Applegate drove to Livsey's office and handed the hand

8  written summons to him.  (*Id*. at 2–3.)  Agent Mand's work diary for April 9, 2009, reflects that

9  he assisted Agent Applegate with issuing the summons on that date.  (*Id*. at 4.)

10       On September 15, 2016, Agent Applegate located the missing file copy of the summons

11  he had issued to CPA Livsey on April 9, 2009.  (Doc. No. 69-4 at 11.)[9]  In his memorandum

12  dated the following day Agent Applegate noted:

13          In reviewing that summons . . . it does not have the description of
           the items that were requested by the summons.  Although that
14          portion of this file copy was not completed, the delivery copy that
           Carl Livsey received did include a description of items requested.
15

            In response to the April 9, 2009 summons to Carl Livsey, Livsey
16          provided two boxes of records.  One box contained tax preparation
            files for MICHAL GALLOWAY, Your Catholic Voice, and Your
17          Catholic Voice Foundation; a Quickbooks CD-ROM containing
            records for Catholic Online; and a number of folders containing
18          bills paid by Michael Galloway.  The second box contained folders
            with payroll information for Catholic Online.
19

20  (*Id*. at 11–12.)[10]

21       In that memorandum Agent Applegate also explained an entry he had made in his daily

22  diary for March 30, 2009 as follows:

23  /////

24
_____

25  [9]  Agent Applegate summarized this in a memorandum of activity dated September 16, 2016.
    (*See* Doc. No. 69-4 at 11–12.)  A copy of the handwritten summons dated May April 9, 2009 has
26  been submitted to the court by the government as an exhibit in opposition to the pending motion
    to suppress evidence.  (Doc. No. 69-6.)
27

28  [10]  Likewise, Agent Applegate noted in prior a report that "Carl Livsey provided a Quickbooks
    backup disc for Catholic Online."  (Doc. No. 67-1.)

1

2

3

> The diary entry reads "Analyze quickbooks.  Mortgage files, and bank records.  Spreadsheet."  The quickbooks that are referred to in that diary entry are reports that were provided to Tax Compliance Officer Sharil Yonan during the audit of MICHAEL GALLOWAY'S tax returns.  Specifically, those reports were:

4

5

> 1. "Catholic Online, General Ledger, January – December 2003" which has a print date of January 10, 2007 and consist of 120 pages (Bates 8356 – 8475).

6

7

> 2. "Catholic Online, Profit & Loss Detail, January – December 2003" which has a print date of January 13, 2007 and consists of 124 pages (Bates 8481 – 8605).

8

(*Id*. at 11.)[11]

9

## II. Analysis

10

As noted, defendant Galloway moves to suppress from admission into evidence the tax

11

records received from CPA Livsey by IRS agents, arguing that 26 U.S.C. § 7609 and the Code of

12

Professional Conduct for CPA's conferred upon him a reasonable expectation of privacy in the

13

documents he had provided to his accountant, Livsey.  (Doc. No. 67 at 6–7.)  Alternatively,

14

defendant Galloway argues the court should exercise its equitable powers to exclude from

15

evidence at trial the business records that the government obtained due to the failure to comply

16

with the requirements of 26 U.S.C. §§ 7603 and 7609.  (*Id*. at 11.)  Below, the court will address

17

each of these arguments.

18

### 1.   Reasonable Expectation of Privacy

19

"[I]n order to claim the protection of the Fourth Amendment, a defendant must

20

demonstrate that he personally has an expectation of privacy in the place searched, and that his

21

expectation is reasonable[.]"  *Minnesota v. Carter*, 525 U.S. 83, 88 (1998): *see also Katz v.*

22

*United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring); *United States v. Lopez-Cruz*,

23

730 F.3d 803, 807 (9th Cir. 2013); *United States v. Ziegler*, 474 F.3d 1184, 1189 (9th Cir. 2007).

24

A reasonable expectation is "one that has a source outside of the Fourth Amendment, either by

25

26

27

28

---

[11]  The court pauses to note that it finds the conducting of this aspect of the IRS investigation, as well as the explanations for the way in which it was carried out, to be somewhat odd.  Indeed, Agent Applegate appears to acknowledge that some of the actions taken by him were out of the ordinary.  (Doc. No. 69-4 at 5.)  However, as noted above, no evidentiary hearing was requested in connection with the pending motion and no credibility determinations are being made in ruling on it.

1    reference to concepts of real or personal property law or to the understandings that are recognized

2    and permitted by society."  *Carter*, 525 U.S. at 88. (internal quotation omitted).  However,

3
4
5
> [T]he extent to which the Fourth Amendment protects people may
> depend on where those people are.  We have held that "capacity to
> claim the protection of the Fourth Amendment depends . . . upon
> whether the person who claims the protection of the Amendment
> has a legitimate expectation of privacy in the invaded place."

6    *Id*. (citation omitted).

7        Defendant Galloway seeks suppression of all evidence obtained by IRS agents from his

8    former CPA on the grounds that the records in question came into government custody as a result

9    of an unlawful seizure.  Fatal to this aspect of the pending motion is the fact that defendant

10   Galloway had no legitimate expectation of privacy in the tax records he had turned over to his

11   accountant.  Generally speaking, one does not have a reasonable expectation of privacy in

12   information revealed to a third party which is passed on to the government.  *See United States v.*

13   *Miller*, 425 U.S. 435, 443 (1976) ("This Court has held repeatedly that the Fourth Amendment

14   does not prohibit the obtaining of information revealed to a third party and conveyed by him to

15   Government authorities, even if the information is revealed on the assumption that it will be used

16   only for a limited purpose and the confidence placed in the third party will not be betrayed."); *see*

17   *also S.E.C. v. Jerry T. O'Brien, Inc*., 467 U.S. 735, 743 (1984) ("It is established that, when a

18   person communicates information to a third party even on the understanding that the

19   communication is confidential, he cannot object if the third party conveys that information or

20   records thereof to law enforcement authorities."); *Donaldson v. United States*, 400 U.S. 517, 522

21   (1971) (an IRS summons directed to third party does not tread upon any interest of the taxpayer to

22   whom the summonsed records relate protected by Fourth Amendment); *Harris v. U.S.I.R.S.*, 758

23   F.2d 456, 457 (9th Cir. 1985) ("Such summonses issued to a third party recordkeeper do not

24   violate the Fourth Amendment."); *Lewis v. United States*, No. 2:11-mc-00039-WBS-DAD, 2012

25   WL 1197784, at *8 (E.D. Cal. Apr. 10, 2012) ("[T]he summonses issued by the IRS seeking

26   documents in the possession of third-parties do not implicate petitioner's rights under the Fourth

27   Amendment."), report and recommendation adopted, No. 2:11-mc-00039-WBS-DAD, 2012 WL

28   3886885 (E.D. Cal. May 4, 2012); *Muratore v. Department of Treasury*, 315 F. Supp. 2d 305,

1   310 (W.D. N.Y. 2004) ("As to the third-party summonses, however, because the documents

2   sought have already been exposed to a third party, petitioners have no reasonable expectation of

3   privacy, and, consequently, no Fourth Amendment objection to production of the documents.");

4   *Vanderhoof v. C.I.R.*, 73 F. Supp. 2d 1165, 1169 (E.D. Cal. 1999) ("Vanderhoof does not have a

5   legitimate privacy interest in bank records and similar documents such that her Fourth

6   Amendment rights would be violated by the disclosures required by the summonses.").

7          Most importantly for resolution of the pending motion, it is well established that a person

8   has no expectation of privacy in business and tax records turned over to an accountant.  *Couch v.*

9   *United States*, 409 U.S. 322, 335-36 (1973).  In *Couch*, a taxpayer hired an accountant as an

10  independent contractor and for many years delivered her business records to him for purposes of

11  preparing her taxes.  409 U.S. at 324.  The IRS undertook an investigation of the taxpayer for tax

12  fraud in connection with the underreporting of her income.  *Id*.  As part of that investigation the

13  IRS issued a summons to the accountant for the taxpayer's records.  *Id*. at 325.  The taxpayer

14  asserted ownership of the business records and asserted a Fifth Amendment privilege as well as a

15  reasonable expectation of privacy in them under the Fourth Amendment in an attempt to thwart

16  their production.  *Id*. at 325, 335.  The Supreme Court rejected these claims, reasoning as follows:

17
18          Although not in itself controlling, we note that no confidential
        accountant-client privilege exists under federal law, and no state-
        created privilege has been recognized in federal cases [citations
19      omitted].   Nor is there justification for such a privilege where
        records relevant to income tax returns are involved in a criminal
20      investigation or prosecution.  In *Boyd*, a pre-income tax case, the
        Court spoke of protection of privacy, 116 U.S., at 630, 6 S. Ct., at
21      532, but there can be little expectation of privacy where records are
        handed to an accountant, knowing that mandatory disclosure of
22      much of the information therein is required in an income tax return.
        What information is not disclosed is largely in the accountant's
23      discretion, not petitioner's.   Indeed, the accountant himself risks
        criminal prosecution if he willfully assists in the preparation of a
24      false return.  26 U.S.C. § 7206(2).  His own need for self-protection
        would often require the right to disclose the information given him.
25      Petitioner seeks extensions of constitutional protections against
        self-incrimination in the very situation where obligations of
26      disclosure exist and under a system largely dependent upon honest
        self-reporting even to survive.  Accordingly, petitioner here cannot
27      reasonably claim, either for Fourth or Fifth Amendment purposes,
        an expectation of protected privacy or confidentiality.

28  /////

1
2
3

> . . . . We hold today that no Fourth or Fifth Amendment claim can prevail where, as in this case, there exists no legitimate expectation of privacy and no semblance of governmental compulsion against the person of the accused.

4   *Id*. at 335-36.

5   The holding in *Couch* has been consistently applied by the lower federal courts.  *See*

6   *United States v. Hickok*, 481 F.2d 377, 379 (9th Cir. 1973); *KRL v. Moore,* No. 2:99-cv-02437-

7   JAM-DAD, 2006 WL 548520, at *4 (E.D. Cal. Mar. 3, 2006) ("It is well established that a person

8   has no expectation of privacy in business and tax records turned over to an accountant."), aff'd in

9   part, rev'd in part on other grounds, and remanded sub nom. *KRL v. Estate of Moore*, 512 F.3d

10  1184 (9th Cir. 2013); *United States v. McLaughlin*, 910 F. Supp. 1054, 1059 (E.D. Pa. 1995)

11  ("Moreover, the defendants' voluntary provision of the records to [his accountant] knowing that

12  they would be used to prepare and be incorporated into tax returns which would be viewed by

13  others, establishes that the defendants had no legitimate expectation of privacy in them.").

14  *Crouch* and its progeny control here, especially in light of the fact that is undisputed that

15  defendant Galloway provided his records to CPA Livsey with the understanding that they would

16  be turned over in the course of the IRS tax audit.

17  Contrary to defendant's assertion, the enactment of 26 U.S.C. § 7609 did not alter this

18  well-established principal.  At the outset, it must be recognized that Congress gave the IRS a

19  "broad mandate to investigate and audit persons who may be liable for taxes."  *United States v.*

20  *Bisceglia*, 420 U.S. 141, 145 (1975) (internal quotation marks omitted).  In order to assist the IRS

21  in carrying out that mandate, it was provided the authority to "summon the person liable for tax ...

22  or any other person ... to appear before the Secretary ... and to produce ... books, papers, records,

23  or other data."  26 U.S.C. § 7602(a)(2).  Section 7609 of Title 26 merely provides that when an

24  IRS summons is served on a "third-party record keeper," the taxpayer to whom the records named

25  in the summons relate is entitled to notice of the summons, and may move to quash the summons

26  or intervene in the summons enforcement proceeding.  26 U.S.C. §§ 7609(a) and (b).  According

27  to the Congressional Committee Report, the purpose of § 7609, is merely to facilitate a taxpayer's

28  opportunity to raise defenses to a third party summons.

1    Congress enacted § 7609 in response to the Supreme Court's decisions in *Donaldson v.*

2    *United States*, 400 U.S. 517 (1971) and *United States v. Bisceglia*, 420 U.S. 141 (1975).  *See*

3    *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 314–15 (1985).  In *Donaldson* the Supreme

4    Court had affirmed the denial of an employee's motions for intervention to oppose the

5    enforcement of an IRS summons issued to his employer.  469 U.S. at 315.  In *Bisceglia* the

6    Supreme Court had upheld a third party summons issued by the IRS to a bank for purposes of

7    identifying an unnamed individual who had deposited a large amount of severely deteriorated

8    currency with the bank.  *Id*.  In response, citing only those two decisions in reports, in 1976

9    Congress enacted § 7609 addressing third party summons served by the IRS to ensure that: (1) the

10   taxpayer to whose business or transactions the summoned records related is informed of the

11   summons and provided an opportunity to intervene in any enforcement proceedings; and (2) in

12   the case of so-called "John Doe" summons where the identity of the specific taxpayer is not

13   known, the government makes a required showing in a court proceeding prior to issuance of the

14   summons.  *Id*. at 315-17.

15    Here, defendant Galloway points out that both the Senate and House Reports assert that

16   the holdings in *Donaldson* and *Bisceglia* might "unreasonably infringe on the civil rights of

17   taxpayers, including the right to privacy."  (Doc. No. 67 at 6) (quoting S. Rep. No. 94-938 at 368

18   and H.R. Rep. No. 94-658 at 307).  Therefore, defendant contends, in enacting § 7609, "Congress

19   recognized that a taxpayer has a reasonable expectation of privacy in those documents provided

20   to third-party record keepers."  *Id*. at 6-7.  Not surprisingly, defendant cites no authority for this

21   contention.  Neither the Senate nor House Report cited *Couch*, in which the Supreme Court had

22   clearly held that the Fourth Amendment did not include a right of privacy that protected business

23   records that had been turned over to a third-party accountant for purposes of preparing tax

24   returns.  409 U.S. at 322.[12]  Moreover, "as explained in the Congressional Committee Report, §

25

26   [12] *See Donaldson*, 400 U.S. at 521 ("there is now no constitutional issue in the case."); *Bisceglia*, 420 U.S. at 149 n.2 ("Respondent also argues that [the summons] violates the Fourth

27   Amendment. . . .  [A]s narrowed by the District Court the summons is at least as specific as the reporting requirements which were upheld against a Fourth Amendment challenge by banks in

28   *California Bankers Assn. v. Shultz*, 416 U.S. 21, 63–70 (1974).").

11

1   7609 is not intended to expand the substantive rights of parties." *United States v. Horton*, 452

2   F. Supp. 472, 476 (C.D. Cal. 1978), aff'd, 629 F.2d 577 (9th Cir. 1980).  Finally, as the

3   authorities cited above establish, since the enactment of § 7609 in 1976, federal courts have

4   continued to follow the binding authority of the Supreme Court's decision in *Couch* in concluding

5   that a person has no expectation of privacy in business and tax records turned over to an

6   accountant.  Thus, defendant Galloway's rights under the Fourth Amendment are simply not

7   implicated by CPA Livsey's production of records to the IRS.[13]

8   **2.   Exclusionary Remedy Pursuant to the Court's Equitable Powers**

9   In the alternative, defendant Galloway argues that even if his constitutional rights were

10  not violated by the manner in which the government obtained the records in question, this court

11  should exercise its equitable powers to exclude those records from evidence at his trial because

12  the IRS failed to comply with the requirements of 26 U.S.C. §§ 7603 and 7609 in obtaining them.

13  (Doc. No. 67 at 11.)

14  However, defendant has cited no authority in support of the proposition that the failure of

15  IRS agents to comply with the procedural requirements imposed by §§ 7603 and 7609 should

16  result in the suppression of the documents obtained from evidence at trial.  Normally, the

17  exclusionary rule "does not extend to violations of statutes and regulations." *United States v.*

18  *Kontny*, 238 F.3d 815, 818 (7th Cir. 2001); *see also United States v. Caceres*, 440 U.S. 741, 755

19  (1979) ("Respondent argues that the [IRS] regulations concerning electronic eavesdropping, even

20  though not required by the Constitution or by statute, are of such importance in safeguarding the

21  privacy of the citizenry that a rigid exclusionary rule should be applied to all evidence obtained in

22  violation of any of their provisions. . . . Nevertheless, . . . we decline to adopt any rigid rule

23  requiring federal courts to exclude any evidence obtained as a result of a violation of these

24  rules."); *United States v. Peters*, 153 F.3d 445, 456 (7th Cir. 1998) ("[C]ourts have viewed with a

25  ─────────────────

[13]  This would be the case even if no summons had been served.  *See United States v. Speck*, 59

26  F.3d 106, 108 (9th Cir. 1995); *see also* 26 U.S.C. § 7609(j).  Moreover, this conclusion is not
    swayed by codes of professional conduct addressing the disclosure of confidential client

27  information by accountants, for there is no client-accountant privilege under federal law.  *See*
    *Couch v. United States*, 409 U.S. 322, 335 (1973) (no federal accountant-client privilege); *United*

28  *States v. Gurtner*, 474 F.2d 297, 298 (9th Cir. 1973).

1    jaundiced eye the IRS' deviations from its own rules and regulations.  That does not mean, of

2    course, that such a deviation is sufficient, standing alone, for exclusion of evidence."); *United*

3    *States v. Michaud*, 860 F.2d 495, 498–99 (1st Cir. 1988) ("[T]he law is clear that an IRS agent's

4    violation of a regulation of this sort does not prevent prosecution and conviction of a defendant,

5    nor does it require suppression of evidence.").

6          Even in the rare areas of possible exception to this general rule, in considering whether

7    suppression of evidence is an available remedy for actions taken in violation of a federal statute,

8    and not the Fourth Amendment, the starting point is determining whether the statute itself

9    contemplates that remedy.  *See United States v. Forrester*, 512 F.3d 500, (9th Cir. 2008); *see also*

10   LaFave, *Search And Seizure, A Treatise On The Fourth Amendment*, § 1.59 (b) (Oct. 2016).

11   Here, on their face, §§ 7603 and 7609 do not authorize the exclusion of evidence as a remedy for

12   violation of their provisions.

13         Finally, defendant Galloway suggests that the court should exercise its equitable authority

14   to exclude the records obtained from CPA Livsey because §§ 7603 and 7609 address privacy

15   interests akin to those protected by the Fourth Amendment.[14]  Again, defendant has not provided

16   a citation to any court decision reaching this conclusion and the court has failed to identify any.

17   Moreover, in instances involving statutory provisions at least as closely connected to criminal

18   investigations and prosecutions, suppression of evidence has not been found applicable where the

19   provisions of those statutes have been violated.  For instance, it has been recognized that violation

20   of the terms of the pen-trap statute (18 U.S.C. § 3122) does not constitute a violation of the

21

22   [14]  Defendant Galloway claims, in conclusory fashion, that had all of the statutory requirements
     been complied with he would have been successful in quashing any summons served on CPA
23   Livsey because the government would have been unable to satisfy *United States  v. Powell*, 379
     U.S. 48, 57 (1964).  (Doc. No. 67 at 10.)  However, despite the fact that the records in question
24   were obtained by the IRS in 2009, defendant Galloway has never made any such showing.  The
     court notes that the burden on the IRS in making a prima facie case for enforcement of such a
25   summons is a slight one because the statute is to be read broadly to ensure that the enforcement
     powers of the IRS are not unduly restricted.  *Crystal v. United States*, 172 F.3d 1141, 1143-44
26   (9th Cir. 1999) (and cases cited therein).  Finally, even if, for the sake of argument, it could not
     have been demonstrated that every procedural requirement had been met in connection with this
27   summons, nothing would have prevented the IRS agents from re-issuing the summons in keeping
28   with those requirements.

1    Fourth Amendment and that suppression of evidence is not an available remedy for violation of

2    the statute.  *See United States v. German*, 486 F.3d 849, 853-54 (5th Cir. 2007) (refusing to

3    extend the exclusionary rule to statutory violations of the pen-trap statute); *United States v.*

4    *Thompson*, 936 F.2d 1249, 1251-52 (11th Cir. 1991) (same); *see also United States v. Benevento*,

5    836 F.2d 60, 69 (2d Cir. 1987) (concluding that exclusionary rule was not applicable to statutory

6    reasonable suspicion requirement for search of effects leaving country because "there is nothing

7    in the legislative history of [31 U.S.C.] section 5317(b) indicating that Congress intended an

8    exclusionary remedy for violations of the statute"), abrogated on other grounds by *United States*

9    *v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989); *United States v. Blue Diamond Coal Co.*, 667 F.2d

10   510, 520 (6th Cir.1981) (suppression not required for failure to obtain consent or an

11   administrative warrant as required by statute for seizure of lawfully inspected records).

12        The court therefore declines to exercise any equitable authority it might have to exclude

13   the records at issue from evidence due to the alleged failure by IRS agents to strictly comply with

14   the procedural requirements of 26 U.S.C. §§ 7603 and 7609.  *See California v. Sierra Club*, 451

15   U.S. 287, 297 (1981) ("The federal judiciary will not engraft a remedy on a statute, no matter how

16   salutary, that Congress did not intend to provide."); *see also Neilson v. United States*, 674 F.

17   Supp. 2d 248, 256 (D.D.C. 2009) (Taxpayer precluded, pursuant to an express provision of the

18   Administrative Procedure Act ("APA"), from seeking injunctive relief under the APA against the

19   IRS' allegedly improper issuance of third-party summonses for records of financial institutions);

20   *Ungaro v. Desert Palace, Inc.*, 732 F. Supp. 1522, 1530 (D. Nev. 1989) (no right to a private

21   cause of action for damages resulting from the alleged violation of § 7609(f)).

                                   **III. CONCLUSION**

23        For all of the reasons set forth above, defendant Galloway's motion to suppress (Doc. No.

24   67) is denied in its entirety.

25   IT IS SO ORDERED.

26     Dated:   **February 23, 2017**                    _____

27                                           UNITED STATES DISTRICT JUDGE

28